**ATLANTIC LINES, LTD., et al., Plaintiffs,**

v.

**M/V DOMBURGH, her engines, tackle, etc., and Trincargo Shipping Limited and the Shipowners' Protection and Indemnity Association, Limited, Defendants.**

**No. 74–261–CIV–JAG.**

United States District Court, S. D. Florida.

July 11, 1979.

Smathers & Thompson, Miami, Fla., Ulmer, Murchison, Ashby & Ball, Jacksonville, Fla., for Jacksonville Shipyards, Inc., McGiffin & Co., Inc.

Harold Colee, Jacksonville, Fla., for Rose Marie Liddy Osteen.

## MEMORANDUM OPINION

GONZALEZ, District Judge.

THIS CAUSE is before the Court on the motion of Shipowners' Protection and Indemnity Association, Limited (Shipowners) to quash service of process by McGiffin and Company, Inc. (McGiffin); or, alternatively, to dismiss plaintiff McGiffin's second amended complaint for lack of jurisdiction over the person of Shipowners.

McGiffin owns a wharf facility in Jacksonville, Florida. On May 1, 1974, there was an allision involving the M/V Domburgh and plaintiff's wharf. Trincargo Shipping, Ltd. (Trincargo) was operating the M/V Domburgh as a time charterer at all times germane to this action. McGiffin alleges that the negligence of the vessel and those charged with her navigation caused damage to its facility. Shipowners insured Trincargo and the vessel under a protection and indemnity policy at the time of the allision.

Atlantic Lines, Ltd., (Atlantic) instituted admiralty proceedings against Trincargo libelling the M/V Domburgh on August 30, 1974, for sums owed for goods and services supplied. McGiffin thereafter filed suit as an intervening plaintiff and is one of ten such intervenors.

McGiffin sues not only the vessel and its charterers; but also the insurer of the vessel, Shipowners, in personam.

McGiffin is a Florida Corporation. Shipowners is an English protection and indemnity association with offices in London, U.K. Trincargo is an organization existing under the laws of Trinidad-Tobago, West Indies.

On October 17, 1974, on motion of Atlantic a default judgment was entered against defendant Trincargo and all persons claiming an interest in the M/V Domburgh. Praecipe for entry of default was made by McGiffin and default entered on its behalf on January 2, 1975. Motions to quash service or, alternatively, to dismiss McGiffin's second amended complaint followed with numerous memoranda of law in support of and opposition to the motions of Shipowners.

■ It has long been settled that marine insurance is a maritime contract within the *subject matter* jurisdiction of an admiralty court. *International Sea Food, Ltd. v. M/V Campeche*, 566 F.2d 482, 485 (5th Cir. 1978); *Ed & Fred, Inc. v. Puritan Marine Insurance Underwriters Corp.*, 506 F.2d 757, 758 (5th Cir. 1975); *Irwin v. Eagle Star Insurance Company*, 455 F.2d 827, 828–9 (5th Cir. 1972); *Frank B. Hall & Co., Inc. v. S.S. Seabreeze Atlantic*, 423 F.Supp. 1205 (S.D. N.Y.1976). *Subject matter* jurisdiction, however, is not the key issue in this cause; *in personam* jurisdiction of an overseas business entity *is*.

An analysis of this Court's jurisdiction over the person of the defendant involves a two step inquiry. First, is the defendant amenable to service of process pursuant to some provision of the forum state's long arm statute? Second, if so, what federal law must be applied in determining whether such assumption of jurisdiction comports with due process? *Poston v. American President Lines, Ltd.*, 452 F.Supp. 568, 571 (S.D.Fla.1978). See also, *Washington v. Norton Manufacturing, Inc.*, 588 F.2d 441 (5th Cir. 1979). (Valid service of process does not necessarily confer in personam jurisdiction over a defendant in federal court).

Florida Statute (F.S.) § 48.193 (1977) entitled "Acts subjecting persons to jurisdictions of courts of state" provides as follows:

Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:

\* \* \* \* \* \*

(d) Contracts to insure any person, property, or risk located in this state at the time of contracting.

 Although the plaintiff has the burden of sustaining an assertion of in personam jurisdiction over a non-resident defendant, the pleadings and affidavits must be considered in the light most favorable to the plaintiff. *Poston v. American President Lines, Inc., supra; Oxford First Corporation v. PNC Liquidating Corporation*, 372 F.Supp. 191 (E.D.Pa.1974). Further, the plaintiff need not prove its case by a preponderance of the evidence in order to satisfy the forum's jurisdictional statute, but rather meet its burden by establishing a *prima facie* cause of action. *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228 (5th Cir. 1973).

 The record discloses that Shipowners contracted to insure property, the M/V "Domburgh", while it was located in the State of Florida; and further contracted to insure risks that the M/V "Domburgh" might encounter while traveling in Florida waters. The M/V "Domburgh" was in a Jacksonville, Florida shipyard at the time of renewal of the protection and indemnity policy, an unremarkable event since the vessel was engaged in scheduled service in and out of Florida ports.

The Court concludes, therefore, that Shipowners is *amenable* to service of process pursuant to F.S. 48.193(1)(d).

Was Shipowners properly served?

The *fundamentals of service of process* and in personam jurisdiction under admiralty subject matter jurisdiction are set forth in *H & F Barge Company, Inc. v. Garber Brothers, Inc.*, 65 F.R.D. 399 (E.D.La.1974) as follows:

(T)he full scope of Rule 4 applies to admiralty proceedings in personam and extends the personal jurisdiction of the court to any defendant properly served under that rule . . . Similarly, under Rule 4(e), the courts have applied to admiralty matters the long-arm provisions of the states in which they sit . . Use of long-arm process, of course, extends the in personam jurisdiction of the

federal courts much further than the provisions of Rule 4(f).

The commentators have not been in doubt on the issue. "(T)he provisions of Rule 4(e) are perforce applicable to actions that are identified as admiralty and maritime under Rule 9(h) . . ." J. Lucas, Cases on Admiralty 296 (1969). See also 2 Moore's Federal Practice ¶ 4.42(4); [12] Wright and Miller, Federal Practice and Procedure § 3243 . . . Thus the view from "the juridical quarter deck," *Penrod Drilling Company v. Johnson*, 5 Cir. 1967, 414 F.2d 1217, reaches as far as Rule 4. 65 F.R.D. at pp. 404–5 (certain citations omitted).

Under Fed.R.Civ.P. 4(e) ". . . service may be made . . . in a manner stated in this rule. Whenever a statute . . . of the state in which the district court is held provides (1) for service of a summons . . . upon a party not an inhabitant of or found within the state . . service may . . . be made under the circumstances and in the manner prescribed in the statute or rule."

The method for service of process upon a defendant amenable to service under F.S. 48.193(1)(d) is provided for in F.S. 48.193(2) wherein it states:

Service of process upon any person who is subject to the jurisdiction of the courts of this state as provided in this section may be made by personally serving the process upon the defendant outside this state, as provided in F.S. 48.194. The service shall have the same effect as if it had been personally served within this state. [F.S. § 48.193(2) (1977)].

The section referred to above provides: Service of process on persons outside of this state shall be made in the same manner as service within this state by any officer authorized to serve process in the state where the person is served. No order of court is required. An affidavit of the officer shall be filed, stating the time, manner, and place of service. The court may consider the affidavit, or any other competent evidence, in determining whether service has been properly made. [F.S. § 48.194 (1977)].

Not without difficulty, McGiffin has complied with both F.S. § 48.194 and Fed.R. Civ.P. 4(e). Service was effected by an English officer handing the summons and complaint to the secretary of Shipowners in its London office. The secretary acknowledged this delivery made by a fellow of the Institute of Legal Executives whose sworn, notarized affidavit attests to his authority. The notary has in turn been certified by the Vice Consul of the United States in London. The return of service includes both proof and affidavit of satisfactory compliance with service requirements.

McGiffin having complied with the state statute, federal law must then be reviewed to establish jurisdictional conformity with due process.

The governing principle is the fairness of subjecting a nonresident defendant to suit. The defendant must have such "minimum contacts" with the state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'". *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Poston v. American President Lines, Ltd.*, 452 F.Supp. 568, 572 (S.D. Fla.1978). Florida courts have not yet construed the Florida Long Arm Statute as to "(d) Contracts to insure any person, property, or risk located within this state at the time of contracting." F.S. § 48.193(1)(d) (1977).

The pertinent act of contracting to insure property or risk located within this state did not occur within Florida. The statute does not appear to require this by its language. Such a construction would be more apposite for the "doing business" statute, F.S. § 48.181 (1977), rather than the "long-arm" statute, F.S. § 48.193 (1977).

The Florida Long Arm Statute has been followed to the last word. The policy of protection and indemnity, if not made within Florida borders, was made with the Florida littoral in mind. Shipowners insured world-wide and the property or risk it insured in this case was insured with a United States deductible while the M/V Domburgh was in Florida waters. As noted, the presence of the vessel in Florida was not an isolated event nor an unusual occurrence. The M/V Domburgh came to Florida with some frequency in its scheduled service into Florida ports. The more than "minimum contracts" of the insured vessel gave rise to this action on a contract by a United States and Florida plaintiff who has a judgment against Shipowners' insured. It does not offend this Court's "traditional notions of fair play and substantial justice" to assume personal jurisdiction of Shipowners at this stage of the proceedings.

McGiffin has clearly met its burden of supporting its allegations of in personam jurisdiction under both Florida and Federal law.

Neither the decision in *Magnus Maritec v. S.S. St. Panteleimon*, 444 F.Supp. 567 (S.D. Tex.1978), relied upon by the plaintiff; nor that in *Erie Insurance Exchange v. Hoffman*, 302 So.2d 445 (3 DCA 1974), relied upon by the defendant, apply to the present case. Those cases both dealt with a "doing business" statute. This Court does not here decide whether the defendant herein was "doing business" in Florida or not.

The Court will retain jurisdiction over the defendant.

DONE AND ORDERED in Chambers at the United States Courthouse, Fort Lauderdale, Florida, this 11 day of July, 1979.