Nancy McLEAN and John McLean, Her Son, Plaintiffs,

v.

The CHURCH OF SCIENTOLOGY OF CALIFORNIA, et al., Defendants.

No. 81–174 Civ. T–K.

United States District Court, M. D. Florida, Tampa Division.

March 16, 1982.

Walt Logan, St. Petersburg, Fla., and
Tony Cunningham, Tampa, Fla., for plain-
tiffs.

Bennie Lazzara, Jr., P.A., Tampa, Fla., for P. Lisa.

Howard J. Stechel, A. Thomas Hunt, Taylor & Roth, Los Angeles, Cal., Gary S. Brooks, Williams, Salomon, Kanner, Damian, Weissler & Brooks, Miami, Fla., Lawrence E. Fuentes, Fuentes & Kreischer, P.A., Tampa, Fla., for Church of Scientology.

Michael L. Kinney, Tampa, Fla., for M. Wolfe.

Alan Goldfarb, Miami, Fla., for L. Ron and Mary Sue Hubbard.

Carl E. Kohlweck, Grey & Kohlweck, Santa Monica, Cal., for P. Lisa.

Barrett S. Litt, Los Angeles, Cal., for Mary Sue Hubbard.

## ORDER

KRENTZMAN, Chief Judge.

This cause came on for hearing on January 7, 1982 upon the motion of defendants L. Ron Hubbard and Mary Sue Hubbard to quash or dismiss the effect of constructive service upon them. The Court has considered the pleadings, the matters in the file, memoranda and argument of the respective counsel, the relevant Florida statute and relevant caselaw, and upon the findings hereinafter made, is of the opinion that the motion to quash should be denied and that plaintiffs have obtained effective service of process upon said defendants.

This is a diversity suit for malicious prosecution, abuse of prosecution, and invasion of privacy. The law of Florida is applicable. The other defendants, including the Church, for purposes of this motion, have been served. On September 8, 1981 plaintiffs filed an affidavit of compliance with Florida Statute 48.181, which in relevant part is as follows:

> 48.181 Service on nonresident engaging in business in state
>
> (1) The acceptance by any person or persons individually, or associated together as a copartnership or any other form or type of association, who are residents of any other state or country, and all foreign corporations, and any person who is a resident of the state and who subsequently becomes a nonresident of the state or conceals his whereabouts, of the privilege extended by law to nonresidents and others to operate, conduct, engage in, or to carry on a business or business venture in the state, or to have an office agency in the state, constitutes an appointment by the persons and foreign corporations of the secretary of state of the state as their agent on whom all process in any action or proceeding against them, or any of them, arising out of any transaction or operation connected with or incidental to the business or business venture may be served. The acceptance of the privilege is signification of the agreement of the persons and foreign corporations that the process against them which is so served is of the same validity as if served personally on the persons or foreign corporations.

A plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state. *Wright & Miller*, § 1068 p. 250. If the allegations of jurisdictional facts are challenged with affidavits or other evidence, the plaintiff must then establish by opposing affidavit, testimony or documents, those material facts supporting the allegations which would justify service of process under the long-arm statutes. *McNutt v. General Motors Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *International Graphics, Inc. v. MTA-Travel Ways, Inc.*, 71 F.R.D. 598 (S.D.Fla.1976); *Underwood v. University of Kentucky*, 390 So.2d 433 (Fla. 3 DCA 1980). A defendant must show invalidity of service by clear and convincing proof before being entitled to an order granting a motion to quash. *Travelers Insurance Co. v. Davis*, 371 So.2d 702 (Fla. 3 DCA 1979).

Plaintiffs allege, in summary, that the Hubbards controlled the Guardian's Office of the Church of Scientology of California, and that it took the alleged actions against plaintiffs in Florida for the purpose of real-

izing a pecuniary benefit. They allege the Hubbards were residents of Florida in late 1975 and early 1976, during which time the actions complained of arose, and that the Hubbards have become non-residents and are concealing their whereabouts. It is clear that such allegations support a reasonable inference of jurisdiction over the Hubbards.

Defendants, however, challenge these allegations with an unsworn statement indicating the Hubbards' independence of the Church of Scientology of Florida, an affidavit stating their similar independence of the Church of Scientology of Boston, two affidavits which tie the Hubbards to Florida as of early 1976 and confirm their leaving Florida thereafter, and an affidavit by the President of the Church of Scientology of California disclaiming any connection by Ron Hubbard with the Church other than as Founder and Author since 1966. No personal affidavits of the Hubbards were submitted.

The plaintiffs respond with exhibits and deposition excerpts supporting jurisdiction. The issue for the Court is whether plaintiffs' evidence sufficiently establishes those material facts supporting jurisdictional allegations in order to overcome defendants' counter evidence and to justify service of process under Florida's constructive service statute.

*Construction of the Florida long-arm statutes*

■ The constitutional standard set by the U.S. Supreme Court for enforcement of state long-arm statutes is that in order for a state to subject a non-resident to its jurisdiction, the nonresident must have certain "minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 315, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Above this threshold due process standard, states vary in the extent to which they allow long-arm jurisdiction to extend. The Fifth Circuit has noted varying trends in Florida courts' construction of the statutes. While it applied a liberal interpretation of the state's statute in *Rebozo v. Washington Post Co.*, 515 F.2d 1208 (5th Cir. 1975), on other occasions it has held that the statute should be strictly construed. *See, e.g., Spencer Boat Co., Inc. v. Liutermoza*, 498 F.2d 332 (5th Cir. 1974); *Costin v. Olen*, 449 F.2d 129 (5th Cir. 1971). Even if the statute is strictly construed, the Court finds that plaintiffs' evidence supporting allegations of jurisdiction herein outweighs defendants' counter evidence and justifies constructive service in Florida pursuant to *Fla.Stat.* 48.181.

*Persons associated together*

The first issue is whether plaintiffs' allegations that the Hubbards are "any person or persons individually, or associated together as a copartnership or any other form or type of association" are sufficiently supported. Significantly, plaintiffs allege that the Church was agent of the Hubbards, rather than that the Hubbards were merely non-resident officers of the resident corporate Church. Defendants submit affidavits and documents refuting the Hubbards' official status subsequent to 1966.

■ Thus plaintiffs are not required to establish personal involvement by the Hubbards as officers. See *Wright & Miller*, Sec. 1068; *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902 (1st Cir. 1980).

The file is replete, however, with support for the allegation that the Church and the Hubbards are closely connected, including the following:

Plaintiff's allegations that the Hubbards controlled the Guardian's Office of the Church is corroborated by the findings in [*U.S. v. Heldt*] *United States v. Hubbard, et al*, 668 F.2d 1238 (C.A.D.C.1981). (Exhibit B to plaintiff's opposition to defendant Lisa's motion for protective order filed October 15, 1981. The indictment there covers the same general time span as this case.) The Court of Appeals found the Hubbards to be the first and second highest officials in the Scientology organization. *Id.* at 1243.

Defendant Lisa was with the Guardian's Office for the Church in Florida for thirteen years. His deposition, taken October 20, 1981 and submitted as an exhibit, reveals that Mary Sue Hubbard supervised the Guardian's Office as Commodore Staff Guardian (CSG) and, as such, was sent reports as late as 1981 (pp. 17–20). Numerous documents attached to the deposition show a copy sent to CSG.

L. Ron Hubbard received mail addressed to him through the Church's office in Florida, according to the Church's Standing Order No. 1, in effect until January 21, 1981. He still receives gifts via the Church according to revised Standing Order No. 1 of the Church, and messages from him are printed regularly in Church publications.

The fact that the Church has paid for the representation of the Hubbards' attorney is corroborative of an association between Hubbards and the Church. (*See e.g.*, Goldfarb deposition, p. 19).

There is significant evidence that the Hubbards were once residents and are now non-residents. Defendants themselves submitted affidavits by Vickie Mead and Kenneth Urquhart stating that Mary Sue and L. Ron Hubbard were in Florida between December, 1975, and June and February, 1976, respectively. Both affidavits state they have not been in Florida since. The numerous efforts to serve the Hubbards at the best address known to plaintiffs indicate that the Hubbards are no longer residents of this state.

Further, the file as a whole supports the allegations that the Hubbards are concealing themselves. The file is full of certified mailings to various known addresses of the Hubbards, including that given by the Church representative returned as non-deliverable. The same is true of attempts at service of the Hubbards in 80–501 Civ T–K (hereinafter referred to as the *"Burden"* case) which is another case pending before this court with similar defendants, and counsel on both sides.

The Court of Appeals opinion confirms such projects as "red box", an organized effort on the part of persons within the Church to hide the whereabouts of key personnel and key documents. Exhibit 3 to Lisa's deposition is "Operation Bulldozer Leak", the stated purpose of which is to spread the rumor that L. Ron Hubbard has no control of the Church and no legal liability for it. To the extent that the Church is shown to be Hubbard's agents, these are efforts of concealment attributable to him.

Relative to the deposition in this case of Hubbards' attorney, plaintiffs in the *Burden* case filed a motion to compel on October 27, 1981. In the Church's response to that motion, the Church represented that one of the major objectives of the employment of Hubbards' attorney is to "assert his [Hubbard's] right to privacy and seclusion". Moreover, the Hubbards' attorney has refused to answer questions concerning the Hubbards' whereabouts or representatives' contacts with him, claiming such information was given to him in confidence, in spite of this Court's ruling elsewhere in this case and in the *Burden* case that such information is not protected by the attorney-client privilege.

■ These comprise corroborative and supportive evidence of the Hubbards' efforts and intent to conceal themselves. Accordingly, the file herein presents a showing sufficient to indicate concealment under Florida law. *Cortez v. N.Y. Capital Group, Inc.*, 401 So.2d 1163 (Fla. 3 DCA 1981).

*Carrying on a business venture in Florida*

The Court is of the opinion that the plaintiffs have adequately supported their allegation that the Hubbards, through their agent the Church, accepted "the privilege to operate, conduct, engage in or carry on a business or business venture in Florida, or to have an office or agency in the state."

■ The inquiry concerns the nature, not extent, of a defendant's activities in the state. Florida courts have shown a willingness to liberally construe "business venture" under *Fla.Stat.* 48.181. Continuous and systematic activities provide a reasonable basis for the assertion of jurisdiction. *Ford Motor Co. v. Atwood Vacuum Machine*

*Co.,* 392 So.2d 1305 (Fla.1981). A commercial transaction for pecuniary benefit is not necessarily required. Participating in the proceeds of an uncle's estate has been held to be a business venture, *McCarthy v. Little River Bank & Trust Co.,* 224 So.2d 338 (Fla. 3 DCA 1969), as has contracting with an in-state hospital for services. *Maryland Casualty Co. v. Hartford et al,* 264 So.2d 842 (Fla. 1 DCA 1972).

The file contains numerous documents and articles as to the extent of the activities of the Church of Scientology of California in Florida and the effect thereof. The exhibits attached to the defendant Church's motion for change of venue, and the Lisa deposition and its exhibits indicate substantial business in the state, including the purchasing of property. In addition, the underlying suit by the Church against the plaintiffs which gave rise to the instant complaint was in Florida and sought a pecuniary award of $300,000.

*Arises out of the business venture in Florida*

Finally, the plaintiffs have met the burden of adequately alleging and praying that this suit arises "out of [a] transaction or operation connected with or incidental to the business or business venture." The underlying suit complained of was brought by defendants against plaintiffs in Florida. It concerned statements plaintiffs made in Florida about the Church of Scientology of California's operations in Florida.

 Upon consideration of the file as a whole, including but not limited to the particular evidence reviewed above, the Court is convinced that plaintiffs have met the burden of alleging and sufficiently establishing those material facts which support constructive service of process in Florida pursuant to *Fla.Stat.* 48.181. The requirements of the statute having been met, plaintiffs' constructive service of L. Ron Hubbard and Mary Sue Hubbard through the Secretary of State of Florida has been accomplished. Further, defendants have failed to present clear and convincing proof that the service is invalid. Accordingly, defendants' motion to quash is DENIED.

At hearing, defendants moved for certification of the Court's order pursuant to 28 U.S.C. § 1292(b). That motion was, and is, GRANTED. The Court is of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion, of which an immediate appeal would materially advance the case.

Subsequent to the hearing, but prior to this order, the Hubbards each filed a motion to dismiss and for reconsideration on January 27, 1982, to which plaintiffs have responded. The Hubbards have joined in each others motion, and ask the Court to reconsider its denial of the motions to quash at hearing, explained herein. The argument by defendants is essentially that presented previously on the motion to quash. The motions are DENIED for the reasons given herein.

Defendants raise the new argument, however, that plaintiffs failed to allege diversity jurisdiction in that the citizenship of the Hubbards is not alleged. Plaintiffs allege that the Hubbards were once Florida residents, have become non-residents of Florida, and are concealing their whereabouts.

The diversity statute provides for jurisdiction between "citizens of a State and foreign states or citizens or subjects thereof." 28 U.S.C. § 1332(a)(2). Plaintiffs are Canadian citizens.

The Court hereby waives the Local Rule requirement of filing a complete, amended pleading, and grants leave to plaintiff to file an amendment to the amended complaint with jurisdictional allegation within 10 days of this order. 28 U.S.C. § 1653.